OPINION
Defendants-appellants, Anne Pussel and Patricia Sikora, appeal their convictions following a joint bench trial on charges of failure to disperse, in violation of R.C. 2917.04(A), a minor misdemeanor. We affirm.
On September 20, 1997, appellants came to Hamilton from Columbus to protest at a rally of the white supremacist group the Aryan Nation. Appellants were accompanied by Lee Putnam, who videotaped events throughout the day. Putnam's videotape was shown during appellants' trial. Some of the day's events were videotaped by local news programs. A compilation of clips from those programs was also shown during the trial. The prosecution and defense stipulated to the admission of both videotapes; however, appellants objected to the relevance of certain portions of their own tape. Three police officers and appellants also testified concerning the day's events.
At the conclusion of the rally, the public was ordered to leave the area. Those in support of the Aryan Nation were instructed to proceed in one direction. Those who had attended to protest were instructed to leave in a different direction.
Appellants left the immediate area of the rally. Putnam's videotape shows that appellant Pussel did not leave promptly, but often stopped or slowed her exit by asking officers for their badge numbers. However, both appellants reached a perimeter which the police had established without directly disobeying the police order to leave the rally area. At this location, near a McDonald's and an adjacent gravel lot, close to where appellants' car was parked, the events leading to appellants' arrests occurred.
Deputy Daniel Burger of the Butler County Sheriff's Department testified that he responded to a call regarding disorderly people at the parking lot adjacent to McDonald's. He observed a large group of people, including appellants, refusing to leave, being moved towards their vehicles by mounted patrol officers. Deputy Burger testified that although Putnam's videotape did not show it, the group was and had been yelling loudly.
Deputy Hamblin of the Butler County Sheriff's Department testified that he was also called to the McDonald's gravel parking lot because a large crowd that was forming. He observed a group shouting, and estimated its size as ten to twelve people. The shouting could be heard from one hundred feet away. When Deputy Hamblin arrived, he observed two individuals sitting on the ground who had been arrested. Officers had formed a perimeter around these arrestees, who were arrested for throwing rocks at the Aryan Nation bus. Deputy Hamblin testified that he was observing the crowd, and specifically appellants and Mr. Putnam (who was videotaping events). He directed appellant Pussel to leave the area. Appellant Pussel did not leave, and was then arrested by Sergeant Lonnie Jones of the Butler County Sheriff's Office. Deputy Hamblin testified that appellant Sikora was told to leave, but did not do so. Deputy Hamblin then arrested appellant Sikora for failure to disperse.
Sergeant Lonnie Jones of the Butler County Sheriff's Office also testified that he came to the McDonald's parking lot and adjacent lot area in response to a call that people were disrupting the business. He heard other deputies from the Butler County Sheriff's Office telling the crowd to go to their cars and vacate the area. Sergeant Jones testified that the crowd in that area had been told several times to "get in their cars and leave the area." He stated that this crowd was yelling when the police arrested two individuals for throwing rocks. Sergeant Jones estimated the crowd at twenty-five to thirty people. He noted that appellants were part of the crowd moving toward the arrestees. He stated that, because of the perimeter the police had established around the arrestees, appellants stopped before they got to the arrestees and then started moving back toward the McDonald's lot.
Sergeant Jones testified that this crowd had been ordered away from the lot several times at that point. Sergeant Jones also testified that when he observed Deputy Hamblin tell Sikora to leave he informed Hamblin "she's been told numerous times, lock her up." Sergeant Jones testified that, although Putnam's videotape did not depict it, there were many people at or near the location where appellants were arrested. Sergeant Jones also testified that when appellant Pussel was arrested, appellant Sikora approached that area despite being told at least twice to leave.
Appellants moved for a directed verdict pursuant to Crim.R. 29 at the close of the state's case and at the close of the evidence. Their motions were denied. Appellant Pussel testified that when she arrived at the McDonald's area she thought she had obeyed the police order to disperse. She stated that Sikora and Hamilton had gone to videotape the arrest of the two individuals for throwing rocks. Appellant Pussel testified that then the mounted police came and that she was "asking for badge numbers again cause I didn't understand what was going on." Appellant Pussel further testified that the vehicle she was trying to get in was surrounded at least on the back by police, and that she was telling the officer that they were trying to leave at the time of her arrest.
Appellant Sikora testified that she stayed with Lee Putnam after the rally ended as she did not want to be separated from the people she had traveled with. She stated that this was why she went with him to videotape the arrest of the individuals who had thrown rocks at the Aryan Nation bus. She testified that she did attempt to back up away from the area of Pussel's arrest and that she did not resist or interfere with that arrest.
The trial court determined that appellants had engaged in a continual course of action in not leaving a situation where it "could escalate." The court noted that there was yelling in the area, and the officers were justified in telling everyone to get out. Therefore, appellants were found guilty of failure to disperse. Appellant Pussel was fined $100 plus costs, and appellant Sikora, who was found to be only "a follower," was fined $25 and costs.
Appellants have raised four assignments of error:
Assignment of Error No. 1:
 THE FINDING OF THE TRIAL COURT THAT THE APPELLANTS WERE GUILTY OF "FAILURE TO DISPERSE" WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS IN PROHIBITING COUNSEL TO QUESTION THE ARRESTING OFFICER DIRECTLY ABOUT WHAT EVIDENCE EXISTED IN SUPPORT OF THE ELEMENT OF "FIVE OTHER PERSONS COMMITTING DISORDERLY CONDUCT."
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANTS BY ADMITTING VIDEOTAPE EVIDENCE OF EVENTS WHICH OCCURRED AT TIMES AND PLACES REMOTE FROM THE TIME AND PLACE OF THE ARREST; AND THEN CONVICTED APPELLANTS BASED ON THOSE EARLIER EVENTS.
Assignment of Error No. 4:
 THE CONVICTIONS HEREIN VIOLATE THE APELLANTS' RIGHTS GUARANTEED BY THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUITON.
Under their first assignment of error, appellants argue that certain elements of the offense of failure to disperse were not established, and that the verdict was thus against the manifest weight of the evidence. In order for a court of appeals to reverse a trial court's judgment on the basis that a verdict is against the manifest weight of the evidence, the appellate court must undertake an independent review of the record. State v.Thompkins (1997), 78 Ohio St.3d 380, 389. In making its analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983), 20 Ohio App.3d 172,175.
Appellants were convicted of failure to disperse in violation of R.C. 2917.04 which provides:
 Where five or more persons are participating in a course of disorderly conduct in violation of section 22917.11 of the Revised Code, and there are other persons in the vicinity whose presence creates the likelihood of physical harm to persons or property or of serious public inconvenience, annoyance, or alarm, a law enforcement officer or other public official may order the participants and such other persons to disperse. No person shall knowingly fail to obey such order.
 Nothing in this section requires persons to disperse who are peaceably assembled for a lawful purpose.
 (C) Whoever violates this section is guilty of failure to disperse, a minor misdemeanor.
Appellants argue that the first element of this statute,i.e., that "five or more persons are participating in a course of disorderly conduct," was not met. We disagree. Two officers testified that at the McDonald's lot area a crowd estimated at between ten and twenty-five persons was yelling loudly. At or near this same location, two individuals were arrested for throwing rocks at the Aryan Nation bus. At this point the officers' testimony indicated that appellants and the entire group had been specifically instructed to get in their cars and leave the area. Therefore, although the videotape taken by appellants' friend, Lee Putnam, shows a relatively calm scene, the testimony of the officers provided ample evidence on the first element of the statute.
Appellants also assert that the state failed to establish the element which requires that there be "other persons in the vicinity whose presence creates the likelihood of physical harm to persons or property or of serious public inconvenience, annoyance or alarm." Again, although the videotape shows a relatively peaceful scene just prior to appellants' arrest, the testimony of the officers satisfied this element as well. The rally was over, and the police had instructed the onlookers to leave the area. The yelling of the crowd (at or near the scene of the arrest of the two individuals for rock throwing) satisfied the element of likelihood of "serious public inconvenience, annoyance, or alarm," although the alternative likelihood of "physical harm to person or property" was arguably not established.
The elements of the statute should be examined closely and citizens' rights to free speech and assembly should not be abridged, as the failure to disperse statute specifically provides. However, legislative comments indicate that this was precisely the type of situation the statute was designed to address:
 [L]aw enforcement officers need a procedure for ordering a potential trouble spot quickly cleared of both those who are disorderly and those who are merely bystanders. Moreover the procedure should be enforceable through an easily proved but minor offense, so that police may act before more serious offenses are committed.
Committee Comment to R.C. 2917.04. The evidence shows that this was such a potential trouble spot and the procedure was appropriately used.
Appellants next argue that even if the above conditions were met, they were not actually disobeying the order to disperse when they were arrested. Failure to disperse is not a static event frozen in time; appellants had been ordered to disperse on numerous occasions. The videotape shows, and even some of the officers acknowledged, that just prior to their arrests appellants were moving toward their car, and thus apparently complying with the most recent order to disperse. However, appellants had been observed failing to obey at least two previous such orders; therefore, their arrests and subsequent convictions were valid.
Appellants finally assert that they were "peaceably assembled for a lawful purpose." However, as indicated above, the elements required for the police to invoke the failure to disperse procedure were present. Had such an arrest been made of spectators or those attending to peaceably protest during the actual rally, for instance, a more particularized need for invoking the procedure would have been required. Here, however, the rally was over, the crowd was yelling during the arrests of the rock-throwers, and appellants had been instructed to get in their cars and leave. They had not complied. It was important that a potential trouble spot be quickly cleared of "both those who are disorderly and those who are merely bystanders." See Committee Comment to R.C. 2917.04. Therefore, we find that all of the elements of the statute were met and appellants' convictions were not against the manifest weight of the evidence.
In their second assignment of error, appellants argue that they were prohibited from asking the arresting police officer a direct question about the existence of an element of the crime. The record does not support this assertion. When appellants' counsel asked Deputy Burger whether he observed what he "would consider committing disorderly conduct," the prosecution objected that it was up to the trial court to determine what constitutes disorderly conduct. The trial court did not sustain the state's objection, but did note that "he can describe the activity. I'll make the decisions." Appellants were never prohibited from asking about the activity that was occurring at the scene of their arrests. Appellants were permitted to ask appropriate questions on all of the elements of the statute. Appellants' second assignment of error is overruled.
In their third assignment of error, appellants argue that the trial court erred by admitting videotape evidence of events which occurred at times and places "remote from their arrest." A trial judge has wide discretion when determining the admissibility of evidence and, absent a clear showing of abuse of discretion, the trial court's determination will not be reversed upon review.Renfro v. Black (1990), 52 Ohio St.3d 27, 32.
The videotape which was provided by appellants contained footage of appellant Pussel asking for the badge numbers of police officers who were dispersing the crowd initially from the rally site. Appellants were not arrested for failing to disperse at that point; indeed, appellant Sikora does not even appear in this portion of the videotape. Such evidence was possibly irrelevant, but its admission did not prejudice appellants as we have found that there was sufficient relevant evidence in the form of the police officers' testimony regarding the events at and around the McDonald's parking lot. Although the record indicates that the trial court may have erred in relying on evidence concerning the earlier events, this was harmless error under the circumstances. Crim.R. 52(A).[1] Therefore, appellant's third assignment of error is not well-taken.
In their final assignment of error, appellants argue that the manner in which the failure to disperse statute was used interfered with their free speech and assembly rights. Appellants' arrests occurred after the rally was over; appellants were not engaging in any protected activity. Rather, they were remaining in an area where disorderly conduct was occurring after having been instructed to leave. Even if appellants were engaging in speech, the right to free speech may not be exercised without regard for reasonable, time, place, and manner restrictions.Heffron v. International Society for Krishna Consciousness
(1981), 452 U.S. 640, 101 S.Ct. 2559.
Similarly, although the freedom to loiter for innocent purposes may be part of the liberty protected by the due process clause, see Chicago v. Morales (June 15, 1999), 67 U.S.L.W. 4415, 4418, the right to assemble may be constitutionally limited by well-drawn or narrowly applicable loitering laws. SeeShuttlesworth v. Birmingham (1965), 382 U.S. 87, 90,86 S.Ct. 214. The failure to disperse statute is narrowly constructed and was appropriately invoked here. The police are not "able to decide arbitrarily which members of the public they will order to disperse." See Chicago v. Morales, 67 U.S.L.W. at 4419. Rather, the order is only valid and a prosecution for failing to obey the order is only authorized where the statute's prerequisites have been met. As discussed in the first assignment of error, the statute's prerequisites were established. Therefore, appellants' final assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.
[1] Crim.R. 52(A) states: "Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."